**William P. MOORE, Plaintiff,**

v.

**ALLIED CHEMICAL CORPORATION, the Travelers Indemnity Company, and Hooker Chemicals & Plastic Corp., Defendants.**

Civ. A. No. 77–0379–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 6, 1979.

See also, D.C., 480 F.Supp. 364.

Edward W. Taylor, Robert M. Johnson, Harris, Tuck & Freasier, John H. Herbig, Richmond, Va., for plaintiff.

Joseph M. Spivey, III, Hunton & Williams, Richmond, Va., Harry E. McCoy, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., W. Carter Younger, McGuire, Woods & Battle, Richmond, Va., for defendants.

## MEMORANDUM OPINION

CLARKE, District Judge.

Plaintiff, a citizen of Virginia, brought this action on July 1, 1977, against defendants, Allied Chemical Corporation (hereinafter "Allied"), a New York corporation with its principal place of business in New Jersey; The Travelers Indemnity Company a corporation organized in a state other than Virginia, with its principal place of business in the State of Connecticut; and Hooker Chemicals & Plastic Corp., a New York corporation with its principal place of business in New York. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332(a), and the case is before the Court on motions for summary judgment by all three defendants.

The Court, in its Opinion of July 17, 1979, 480 F.Supp. 364, set forth the general factual background of the case and adjudicated defendants' contention that the suit was barred by the statute of limitations. Portions of two counts of plaintiff's Com-

plaint survived the statute of limitations: Count I insofar as it alleged a claim for intentional infliction of emotional distress, and Count V insofar as it alleged republication of defamatory statements. Both of these remaining claims are against defendant Allied only. In its Order of July 26, 1979, the Court found that additional testimony at trial would be necessary to resolve defendants' contention that a settlement made by plaintiff with his former attorneys released defendants from any liability here. The Court will now examine whether litigation before the Occupational Safety and Health Administration (OSHA) collaterally estops plaintiff from pursuing the two remaining claims against defendant Allied that are not time-barred by the applicable statute of limitations. In addressing the collateral estoppel question, the chronology of the OSHA proceedings will be set forth first, followed by a discussion of the doctrine of collateral estoppel as it applies to the two remaining claims.

### The OSHA Litigation

Life Science Products Company (hereinafter "LSP"), of which plaintiff William P. Moore and Virgil Hundtofte were the two principals and sole stockholders, commenced operations in March 1974, and voluntarily ceased activities no later than July 24, 1975. Following LSP's cessation of operations, officials of OSHA conducted an inspection of the worksite from August 11, 1975, to August 18, 1975. As a result of this inspection, two citations for serious violations and two citations for willful violations of the Occupational Safety and Health Act of 1970 (hereinafter "the Act"), 29 U.S.C. § 654(a)(1) and (2),[1] and a notification of a proposed penalty of $16,500.00, were issued against LSP and against Moore and Hundtofte individually. LSP, Moore, and Hundtofte filed a notice of protest to the citations on September 8, 1975. The Secretary of Labor then filed a Complaint on September 29, 1975, in which the allegations in the willful citations were restated and supplemented as set forth below:[2]

### VIII

Since on or about March 1, 1974, Respondents have willfully violated and are continuing to violate Section 5(a)(1) [29 U.S.C. § 654(a)(1)] of the Act in that Respondents have failed to furnish their employees working in the establishment, employment and a place of employment which was free from recognized hazards that were causing or likely to cause death or serious physical harm to their employees in that Respondents did not utilize feasible engineering control measures to prevent employees from being exposed to toxic substances including, but not limited to Decachlorooctahydro-1,3,4-metheno-2Hcyclobuta (cd) pentalen-2-one (Kepone) and Hexachlorocyclopentadiene (HCP) . . . (Citation No. 3).

### IX

Since on or about March 1, 1974, Respondents have willfully violated and are continuing to violate Section 5(a) (2) of the Act [29 U.S.C. § 654(a) (2)] and 29 CFR 1910.132(a) in that personal protective equipment including, but not limited to, impervious gloves, impervious boots, impervious coveralls, chemical goggles, proper respirators and head protection was not provided and required to be used and maintained in a sanitary and reliable condition in order to provide protection

---

1. The section reads in pertinent part:
 (a) Each employer—
 (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
 (2) shall comply with occupational safety and health standards promulgated under this chapter.

2. Counts X and XI of the Complaint set forth the serious violations of the Act, Citations No. 1 and No. 2, which basically alleged that LSP, Moore, and Hundtofte allowed their employees to consume and store foods "in a work area exposed to toxic substances," including Kepone. Count XIII defined the standard of the serious violations as knowing or having reason to know of the presence of the violations.

from toxic materials including, but not limited to: Decachlorooctahydrol,3,4metheno-2Hcyclobuta (cd) pentalen2one (Kepone), and Hexachlorocyclopentadiene (HCP) . . . (Citation No. 4).

The Complaint also defined the willful standard under which the violations arose and the citations were issued:

### XII

The violations described in paragraphs VIII and IX above are willful within the meaning of 29 U.S.C. § 666(a) in that the *violations were intentional and knowing, as distinguished from inadvertent* and the Respondents *were conscious that their actions or omissions constituted violations* of the Act, or, *in the alternative*, even though Respondents may not have been consciously violating the Act, they were *aware that hazardous conditions existed and made no reasonable effort to eliminate the conditions.* (emphasis added)

LSP, Hundtofte, and Moore filed an Answer in which they denied all of the violations alleged in the OSHA Complaint. Mr. Moore and Mr. Hundtofte also filed a Motion to Dismiss the action against them as individuals, which was denied, and the trial was set for February 17, 1976. Before the trial, however, on February 13, 1976, counsel for OSHA and for the three named parties participated in a pretrial conference in the office of Administrative Law Judge William E. Brennan. At this conference, LSP, Moore, and Hundtofte filed a motion to withdraw their original Answer and to file an Amended Answer. The motion was granted, and the Amended Answer, filed by counsel during the course of the pretrial conference, denied that Moore and Hundtofte were employers within the meaning of the Act on the basis that they had acted only as officers of LSP; consequently, they could not be held individually liable for the OSHA violations. The Amended Answer failed to deny the other allegations in the Complaint, which were thereby deemed admitted. *See Life Science Products Co., et al.,* 1975–76 OSHD (CCH) ¶ 20,461, *aff'd,* 1977–78 OSHD (CCH) ¶ 22,313 (OSHRC Docket No. 14910). Judge Brennan made the determination that the remaining allegations in the OSHA Complaint were admitted, making a trial unnecessary, on the basis of both the Amended Answer and the representations clarifying this Amended Answer made by counsel for LSP, Moore, and Hundtofte.[3] He then affirmed the four

---

3. The following colloquy occurred on February 13, 1976, at the pretrial conference:

JUDGE BRENNAN: Is there any objection to entering the amended Answer of the Respondents?

MR. HARRIS [attorney for complainant]: Judge, I have no objection, but I want my understanding of the effect of the amended Answer on record so that if any other Counsel disagrees with my understanding, they can state that disagreement. Under Rule 33(b)(2) of the Commission Rules, it is my understanding that any allegation of the Complaint not specifically denied in this amended Answer is in fact admitted. For the purpose of this proceeding, I would move that the allegations of the Complaint not specifically denied in the amended Answer be deemed admitted.

JUDGE BRENNAN: Do you have any understanding to the contrary, Mr. Coldwell?

MR. COLDWELL: No, Your Honor.

. . . . .

JUDGE BRENNAN: Essentially, the amended Answer, as I read it very hurriedly as it has been handed to me and in light of the motion now granted by Complainant, all facts well pleaded in the Complaint have been admitted by the Respondents except for the allegations of Paragraphs 3 and 4 of the Complaint which without burdening the record for the recitation thereof essentially allege individual responsibility for the violations pleaded in the Complaint by Mr. Hundtofte and Mr. Moore. At this juncture at least the way I conceive the status of the case, there is outstanding because of the wording of Paragraphs 3 and 4 of the Complaint at least a legal, question, and that is whether the corporate officers, Messieurs Hundtofte and Moore, were legally responsible as individuals for the actions now admitted to have been violations on behalf of the corporate entity.

Do you have any different view, gentlemen, as to the status of the case?

MR. HARRIS: No, Your Honor, I would agree with your view on the status of the case.

JUDGE BRENNAN: Mr. Coldwell, do you agree with that?

MR. COLDWELL: Yes, Your Honor.

citations and assessed the $16,500.00 penalty for the violations. *Id.* at 1975–76 OSHD (CCH) ¶ 20,461. Therefore, no actual trial was held in which evidence was presented to support Judge Brennan's determination that the OSHA violations had been committed by LSP, Moore, and Hundtofte. Rather, his reported decision, filed with OSHA on March 9, 1976, specifically incorporated by reference the admitted factual allegations in the OSHA Complaint and stated that they constituted Findings of Fact. *Id.*

Mr. Moore and Mr. Hundtofte appealed Judge Brennan's decision to the Occupational Safety and Health Review Commission (OSHRC), challenging only the finding that they individually were employers under the Act, as opposed to acting as officers of a corporation. They challenged no other factual finding. *Life Science Products Co., et al.*, 1977–78 OSHD (CCH) ¶ 22,313 (OSHRC Docket No. 14910). The Review Commission affirmed the Judge's decision, and an appeal was taken to the Fourth Circuit Court of Appeals. Again, Mr. Moore and Mr. Hundtofte only contested their individual liability, based upon the finding that they were employers within the meaning of the Act. They did not deny or challenge any of the other allegations in the Complaint which had constituted Findings of Fact in Judge Brennan's decision. The Fourth Circuit affirmed the Review Commission's decision, reasoning that, under the Virginia corporation dissolution statute, corporate directors were individually responsible for liability created by contin-

uation of corporate business after dissolution and that reinstatement of a corporate charter did not alleviate such liability. *Moore v. Occupational Safety & Health Review Comm'n*, 591 F.2d 991 (4th Cir. 1979). Although on June 3, 1975, LSP had been dissolved by operation of law under § 13.1–91, Code of Virginia, 1950, as amended, for failure to file an annual report and to pay certain franchise taxes, the corporate charter was reinstated on August 13, 1975, pursuant to § 13.1–92, Code of Virginia, 1950. However, despite the dissolution, and notification thereof, LSP continued normal plant operations, and the OSHA inspection, with the resulting citations, began on August 11, 1975, and continued to August 18, 1975. Mr. Moore and Mr. Hundtofte contended through two appeals of Judge Brennan's decision that the reinstatement of the corporate charter on August 13, 1975, relieved them of personal liability for the OSHA violations. Since neither OSHRC nor the Fourth Circuit agreed with this contention, and since no other challenge to the OSHA violations was asserted, Mr. Moore and Mr. Hundtofte were held individually liable for the violations. *Id.* at 996.

Allied now contends that the admissions in the foregoing OSHA litigation collaterally estop Moore from alleging that he was unaware of the full dangers of Kepone and thereby pursuing his claims against Allied.

### Collateral Estoppel

 Since the Court's jurisdiction is based on diversity of citizenship, the doc-

---

JUDGE BRENNAN: Is there then a need for an evidentiary trial in this case in order to resolve the remaining legal issue?

MR. COLDWELL: If I might address myself to that, I would like to get this in the record. I believe that the Court on its own motion at this point, there being no issues of fact to be resolved, the Court on its own motion can rule on the question of law that the Court already has before it and has previously ruled on.

. . . . .

MR. HARRIS: Well, by withdrawing their Answer, there has been in my view an admission that the violations as to the corporation as alleged in the Complaint were in fact admitted including an allegation at least to two

of the items that were willful violations of the Act.

Is Mr. Coldwell conceding that as corporate officers and the individuals responsible for the corporate affairs including the safety and health affairs of the corporation, that these individuals were responsible for the willful violations of the Act by the corporation?

MR. COLDWELL: If, Your Honor, please, I believe that that is beating the dead horse again because I believe that is what the status of the pleadings show. Yes, it is admitted because it is admitted in the pleadings. Transcript of Proceedings at 60 (lines 16–25), 61 (lines 1–5, 17–25), 62 (lines 1–14, 17–25), 85 (lines 18–25), 86 (lines 1–6).

trine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), applies the substantive law of Virginia to the case. Accordingly, Virginia law on collateral estoppel governs. *Graves v. Associated Transport, Inc.*, 344 F.2d 894, 896 (4th Cir. 1965). The Supreme Court of Virginia has recognized the doctrine of collateral estoppel as barring a party from relitigating issues or facts that have already been determined, even though the previous determination may have involved a different cause of action and different parties.[4] *Bates v. Devers*, 214 Va. 667, 202 S.E.2d 917, 920–21, 921 n.7 (1974). *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), *overruling* the doctrine of mutuality of estoppel set forth in *Triplett v. Lowell*, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), and *citing with approval Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942) (Traynor, J.), in which the doctrine of mutuality was unanimously rejected; *Graves v. Associated Transport, Inc., supra* (applying Virginia law on collateral estoppel and requiring no mutuality of parties). The principal requirement to invoke the bar of collateral estoppel is that the plaintiff must have had a full and fair opportunity to litigate the same issue or fact in a previous action.[5] *See Graves v. Associated Transport, Inc., supra; Bates v. Devers, supra.* Once the plaintiff has been accorded that full opportunity to litigate the issue, the doctrine of collateral estoppel promotes the state's interest in maintaining finality in the legal process and avoiding duplication of court time. As the Court in *Graves* summarized:

> As we understand the law of the Commonwealth of Virginia, it is designed to insure that every litigant has an opportunity to be heard on any appropriate issue in a court of law. However, the decisions of the highest court of Virginia convince us that the state also is anxious to insure that once a party has been afforded a chance to assert his claim, further litigation involving that claim is not to be permitted. The state has a legitimate interest in the *final* adjudication of legal disputes, and it is incumbent upon us in this case to give effect to that state policy.

344 F.2d at 901–02.

■ This Court further notes that an administrative proceeding can be the basis for invoking the doctrine of collateral estoppel. *See, e. g., United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Bowen v. United States*, 570 F.2d 1311 (7th Cir. 1978); *North Carolina v. Chas. Pfizer & Co.*, 537 F.2d 67 (4th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Painters Dist. Council No. 38 v. Edgewood Contracting Co.*, 416 F.2d 1081 (5th Cir. 1969). *See also Appalachian Power Co. v. Walker*, 214 Va. 524, 201 S.E.2d 758, 766 (1964) (by

---

4. For a comprehensive discussion of the doctrine of collateral estoppel, see 1B *Moore's Federal Practice* ¶ 0.441 *et seq.* (1974); *Restatement of Judgments* § 68 *et seq.* (1942). The Court also notes that while the terms *res judicata* and collateral estoppel are often used interchangeably, *res judicata* is a more narrow doctrine barring a subsequent suit between the same parties on the same cause of action. *Id.* See *Azalea Drive-In Theater, Inc. v. Sargoy*, 394 F.Supp. 568, 572–73 (E.D.Va.1975), for a brief discussion of the distinctions between the two doctrines. Since Allied was not a party to the OSHA litigation, the doctrine of collateral estoppel, and not *res judicata*, applies to this case.

5. Traditionally, collateral estoppel could only be used defensively by the defendant. A plaintiff could not invoke the doctrine to prevent a defendant from litigating an issue that the defendant had previously litigated with another party in another action. The Supreme Court, however, recently modified this prohibition by upholding the offensive use of collateral estoppel by a plaintiff under certain circumstances, namely when plaintiff could not have joined in the earlier action and when invoking offensive use of collateral estoppel would not be unfair to the defendant. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Since the present case before this Court involves a defensive use of collateral estoppel by defendant Allied, consideration of the offensive-defensive distinction is not necessary, and the Court will focus on the principal requirement of a full and fair opportunity to litigate by the plaintiff.

implication). The key factor in determining when an administrative action can constitute *res judicata* or collateral estoppel is whether that agency "is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties . . had adequate opportunity to litigate . . [in that] both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings." *United States v. Utah Construction & Mining Co., supra,* 384 U.S. at 422, 86 S.Ct. at 1560. *See Appalachian Power Co. v. Walker, supra,* 201 S.E.2d at 766.

With this background, the Court turns to the question of whether the factual findings and issues resolved in the OSHA litigation collaterally estop Mr. Moore from maintaining this action on the remaining counts of intentional infliction of emotional distress and defamation, which were not time-barred by the applicable statutes of limitations. Since Allied's assertion of collateral estoppel is not precluded because it was not a party to the OSHA proceedings or because the factual findings upon which it relies were made by an administrative body, the only remaining considerations are whether plaintiff Moore had a full and fair opportunity to litigate the factual findings of Judge Brennan, and, if such full opportunity did exist, whether those factual findings and issues are substantively the same as those which Mr. Moore now seeks to litigate against Allied.

The chronology of the OSHA litigation, as already detailed in this Opinion, clearly reveals that Mr. Moore had a full and fair opportunity to litigate the allegations in the Complaint (Counts VIII through XI) which were made Findings of Fact in Judge Brennan's reported decision of March 9, 1976. Even though no actual trial was held, Moore filed an Answer to the OSHA Complaint, various motions, and an Amended Answer before Judge Brennan rendered his reported decision; Moore made two appeals to that decision; and he was represented by counsel at all stages in the proceedings. Not only was Judge Brennan's decision upheld on the two appeals, *Life Science Prod-*

*ucts Co., et al.,* 1975–76 OSHD (CCH) ¶ 20,-461, *aff'd,* 1977–78 OSHD (CCH) ¶ 22,313, *aff'd sub nom., Moore v. Occupational Safety & Health Review Comm'n,* 591 F.2d 991 (4th Cir. 1979), but the only question raised on appeal was whether Moore and Hundtofte could be individually liable as employers under the Act. Counts VIII through XI of the Complaint, which had been incorporated as Findings of Fact in Judge Brennan's decision, were not challenged. In other words, Moore chose not to litigate the underlying factual basis of the OSHA Complaint, that the willful violations of OSHA safety standards had been committed, and limited his challenge to the technical issue of his individual liability.

Plaintiff further contends, however, that he personally has not had a full and fair hearing on Judge Brennan's factual findings because they resulted from admissions made by his attorney, Mr. Coldwell, in the pretrial conference before Judge Brennan. Moore claims that Coldwell was without authority to make the admissions at the pretrial conference. Plaintiff concedes that generally admissions or stipulations made by an attorney in the course of litigation are binding upon the client, but he claims that they are not binding when they amount to a disposition of the client's claim or defense or when they surrender substantial rights of the client. For support of this proposition, plaintiff relies on *Harris v. Diamond Construction Co.,* 184 Va. 711, 36 S.E.2d .573 (1946), in which the Virginia Supreme Court stated:

> While . . . an attorney at law, by virtue of his employment, has no authority to compromise the claim of his client without the latter's consent, he has full authority to act on behalf of his client in the conduct of the litigation before the court, and by virtue of such authority he may make admissions of or stipulations as to facts, the effect of which is to dispense with proof of such facts. . . .
>
> Of course, we do not mean to imply that an attorney, without the consent of

his client, may surrender any substantial rights of the latter.

36 S.E.2d at 578, 579.

Plaintiff does not, however, proceed to examine the case relied upon by the Court in *Harris* to explain the difference between unauthorized compromise settlements made by an attorney and authorized agreed stipulations. The case, *Christy v. Atchison, Topeka, & Santa Fe Ry. Co.*, 233 F. 255 (8th Cir. 1916), upheld the power of a county attorney to stipulate facts, upon which the Court decided the case against the county, as long as there was no "fraud, mistake, or collusion, or disobedience of affirmative instructions. The question is simply one of the implied power of counsel for a litigant." *Id.* at 256. The Court in *Christy* further concluded:

It is well settled that short of a compromise of a client's claim or a confession of judgment the authority of counsel in a case extends generally to all the customary incidents of litigation and embraces all agreements, stipulations, and admissions appertaining to its conduct through the courts.

233 F. at 256–57, *citing, e. g., Stone v. Bank of Commerce*, 174 U.S. 412, 19 S.Ct. 747, 43 L.Ed. 1028 (1899); *Halliday v. Stuart*, 151 U.S. 229, 14 S.Ct. 302, 38 L.Ed. 141 (1894); *Oscanyan v. Arms Co.*, 103 U.S. 261, 26 L.Ed. 539 (1880); *Holker v. Parker*, 7 Cranch 436, 3 L.Ed. 396 (U.S. 1813). Using the above principle, the Court of Appeals upheld the trial court's judgment against the county. Although the trial court's judgment was based strictly upon the pleadings and the facts stipulated by the county attorney, without taking further evidence from either side, the Court of Appeals reasoned that the stipulation was not a compromise or a confession of judgment. Rather, the trial court had rendered a decision by applying the law to the stipulated facts before the Court. *Christy v. Atchison, Topeka, & Santa Fe Ry. Co., supra* at 257.

This Court is of the opinion that Mr. Coldwell's admissions in the pretrial conference were authorized as a matter of law under the *Harris* standard, as amplified by *Christy v. Atchison, Topeka, & Santa Fe Ry. Co., supra.* Filing an Amended Answer and stipulating facts in the course of litigation are certainly "customary incidents" of that litigation and not a final compromise of the claim or a confession of judgment. The Amended Answer, as clarified by Mr. Coldwell's statements at the pretrial conference, admitted, by failure to deny, that the underlying facts of the OSHA Complaint were true and asserted a theory that, even if the facts were true, Moore and Hundtofte were not employers under the Act and therefore not personally liable. Essentially, Mr. Coldwell stipulated to the facts alleged, disputing only their legal significance. That the Amended Answer and the state of the pleadings contributed substantially to the result of Judge Brennan's decision and that plaintiff's legal argument of not being an employer within the meaning of the Act was rejected by Judge Brennan, OSHRC, and the Fourth Circuit does not change the character of the admissions from mere stipulations of facts to a complete compromise of Mr. Moore's legal rights, thereby allowing him to contend that his attorney's actions were unauthorized. *See Christy v. Atchison, Topeka, & Santa Fe Ry. Co., supra* at 257.

Moreover, even if Mr. Coldwell's admissions at the pretrial conference were unauthorized, plaintiff Moore subsequently ratified his actions. Judge Brennan's decision was published, a matter of public record; Mr. Moore cannot claim he did not know of the Findings of Fact or the basis of the decision. He continued to retain the same counsel through two appeals in which only Moore's individual liability was challenged. If Mr. Moore had an objection to the actions of his counsel or the legal stance put forth in the OSHA proceedings, he should have asserted these objections in those proceedings. *Cf. Christy v. Atchison, Topeka, & Santa Fe Ry. Co., supra; Harris v. Diamond Construction Co., supra* (question of attorney's authority raised on appeal of trial court's decision in both cases). Moore failed to assert any such objection and therefore acquiesced in these admissions by pursuing Coldwell's legal theory through the two ap-

peals. Had this theory been successful, Moore certainly would have accepted the benefits. Accordingly, he must also accept the consequences. The plaintiff cannot be in a position to obtain the benefits of his attorney's actions on the one hand and to deny unfavorable results on the other. In other words, Mr. Moore did not change his counsel or challenge Judge Brennan's factual findings in the subsequent appeals, thereby ratifying any possible unauthorized admissions by Mr. Coldwell during the pretrial conference.

Having decided that Mr. Moore did have a full and fair opportunity to litigate Judge Brennan's Findings of Fact, in particular Counts VIII and IX of the Complaint, the Court will now focus on those counts to determine if they involve substantively the same issues as those which Mr. Moore now seeks to litigate against defendants.

A. *Intentional Infliction of Emotional Distress*

Plaintiff's Complaint alleges that defendant Allied knew of the devastating physiological effects which Kepone could have on his workers, but that Allied deliberately failed to warn him of these dangers. As a result of this failure to warn, plaintiff contends that many of his workers became chronically ill and permanently disabled, and that he was subjected to civil law suits and prosecution by governmental agencies, with the attendant fines and penalties. The illnesses of his workers, as well as the legal actions and fines against him, allegedly caused plaintiff Moore "considerable pain, mental anguish and suffering." Mr. Moore is essentially contending that without sufficient knowledge of the toxicity of Kepone, facts which Allied supposedly withheld, he was unable to provide a safe workplace for his employees and to thereby avoid the law suits and penalties he incurred. Accordingly, he now attempts to hold Allied liable for the emotional distress *which he suffered* from such injuries, suits, and penalties.

In effect, then, plaintiff is attempting to shift the responsibility for the condition of his workplace and the resulting injuries to his employees from himself to Allied by alleging that Allied intentionally withheld information on the toxicity of Kepone from him. In order to maintain such a position, it is necessary for plaintiff Moore to establish that he lacked sufficient knowledge of the dangers of Kepone and that he therefore lacked responsibility for the safety of the LSP work environment. It is Allied's contention that these two facts have previously been litigated in the OSHA proceedings.

In response to Count VIII of the OSHA Complaint, Moore admitted that he willfully failed to provide his employees with a workplace free from recognized hazards. In response to Count IX, he admitted willfully failing to provide his workers with protective equipment. Count XII of the Complaint specifically defines willful as "intentional and knowing," and as either a "conscious" violation of the Act or at least "aware that hazardous conditions existed and made no reasonable effort to eliminate the conditions." Therefore, a necessary element of these willful violations is that Moore knew Kepone was toxic, even if he was unaware of the full toxicity. Furthermore, through the admissions of his attorney, Mr. Coldwell, at the pretrial conference, which were referenced by Judge Brennan in his opinion, *Life Science Products Co., et al.,* 1975–76 OSHD (CCH) ¶ 20,461 (OSHRC Docket No. 14910), the counts of the Complaint already admitted were amplified by specific admissions of direct responsibility for the OSHA violations.[6]

6. The following dialogue occurred on February 13, 1976, at the pretrial conference:

MR. COLDWELL: . . . It is the position of the Respondents that the record shows the following and in addition the Respondents admit thereto that all of the allegation in the Complaint except those that state that Mr. Hundtofte and Mr. Moore acted in an individual capacity at the time the violations occurred are admitted; that under Paragraphs 3 and 4 of the Complaint, it is alleged that Mr. Hundtofte and Mr. Moore were officers of the corporation engaged in the daily activities of the corporation and the

■ This Court is of the opinion that Moore's admission of a *willful* violation of failing to provide a workplace safe from a *recognized* hazard necessarily admits *knowledge* of the toxicity of Kepone. Although Mr. Moore does not admit any quantum of knowledge, he does admit sufficient knowledge to be put under a duty to provide the safeguards himself, a duty for which he was held liable. *Life Science Products Co., et al.*, 1975–76 OSHD (CCH) ¶ 20,461, *aff'd*, 1977–78 OSHD (CCH) ¶ 22,-313, *aff'd sub nom., Moore v. Occupational Safety & Health Review Comm'n*, 591 F.2d 991 (4th Cir. 1979). As noted earlier, however, a necessary element of Moore's claim for intentional infliction of emotional distress against Allied is that he did not possess sufficient knowledge of the toxicity of Kepone's dangers to avoid the harms which caused his distress and that Allied did possess such knowledge, which it intentionally withheld from him. Yet, Moore has already admitted in the OSHA proceedings that he knew Kepone was dangerous, that he was responsible for his workers, and that he should have acted accordingly to protect his workers at LSP from the dangers of Kepone. If Moore had acted properly with the knowledge he possessed, he would not have suffered the personal distress for which he now seeks to hold Allied responsible. Essentially his admissions reveal that he caused his own emotional distress; he cannot now relitigate his responsibility and knowledge through a claim of intentional infliction of emotional distress against Allied. Plaintiff Moore is collaterally es-

two persons and only two persons having direct responsibility for the working conditions affecting the safety and health of its employees; that under the pleadings is admitted. The Complaint alleges that during that period, November 3rd to June 1, 1975, that violations of the Act occurred during the period that they had the direct responsibility for the working conditions affecting the safety and health of its employees, and these violations are admitted.

I believe that that correctly states my position throughout. . . .

MR. HARRIS [attorney for complainant]: You use the phrase direct responsibility. Do you concede for the purposes of the record that these two individuals were the persons effectively in charge of the corporate affairs during this relevant period?

MR. COLDWELL: Yes.

MR. HARRIS: And that the violations of the Occupational Safety and Health Act admitted by the corporation as now apparent on the record were in fact caused by these individuals?

MR. COLDWELL: I am going to answer that rather strangely. I am not going to admit that because I have already admitted it.

MR. HARRIS: You feel that that is the status of the record now and that is an admission?

MR. COLDWELL: Yes.

MR. HARRIS: So that—

MR. COLDWELL: Can I go off the record for just one minute?

JUDGE BRENNAN: All right.

(Discussion had off the record.)

JUDGE BRENNAN: Back on the record.

MR. HARRIS: Now, I understand your agreement to be, Mr. Coldwell, that Mr. Hundtofte and Mr. Moore were the only persons actively involved in the conduct of the corporate affairs during this relevant period.

MR. COLDWELL: That is correct.

MR. HARRIS: And that these individuals are and were the only individuals responsible for the violations of the Occupational Safety and Health Act committed by the corporation during this period.

JUDGE BRENNAN: As opposed to any other living human—

MR. HARRIS: As opposed to any other individuals.

MR. COLDWELL: The answer to that is yes. It is their ultimate responsibility even though they may have had some supervisor or something who was actually doing some part of the work. It is their responsibility. They are the persons and the only persons who are responsible for the conditions that existed at the plant that constituted violations.

MR. HARRIS: I am not talking really about ultimate responsibility. I am talking about the fact that they in fact were actively engaged in management of corporate affairs during this period and were in fact not ultimately responsible, but were in fact responsible for the activities committed by the corporation which constituted violations of the Occupational Safety and Health Act.

JUDGE BRENNAN: As a factual matter.

MR. HARRIS: As a factual matter without getting into any further details.

MR. COLDWELL: The answer is yes in that it has been admitted in the pleadings and previously, the same thing.

Transcript of Proceedings at 88 (lines 11–25), 89 (lines 1–7, 18–25), 90 (lines 1–25), 91 (lines 1–20).

topped from litigating the factual issues of his knowledge of Kepone's hazardous nature and his responsibility for the workers at LSP, factual issues which form the basis of his claim of intentional infliction of emotional distress against Allied.

### B. *Defamation*

Count V of plaintiff's Complaint alleges that defendant Allied intentionally defamed Moore's character by referring to him as the "world's leading expert on Kepone" and the "real culprit" in the Kepone disaster. Moore claims that such defamation made him a scapegoat by shifting the blame for the Kepone disaster from Allied to him. Allied argues that the OSHA findings collaterally estop Moore from asserting this claim of defamation. The essence of Allied's argument is that Moore's admissions of willfully failing to provide a workplace free from Kepone's recognized hazards and his admissions of direct responsibility for LSP's working conditions are sufficient to establish the truth of Allied's statements. Since Moore is collaterally estopped from relitigating the OSHA admissions and since truth is a complete defense to defamation, Allied contends that Moore is collaterally estopped from maintaining this count of defamation.

The Court cannot agree with defendant Allied's contention. While Moore is collaterally estopped from relitigating or denying the admissions he made in the OSHA proceedings, in which he had a full and fair opportunity to be heard, the facts and issues determined in the OSHA litigation are not substantively the same as those now before the Court in Moore's defamation claim. That Moore had knowledge of the hazards of Kepone does not make him the "world's expert" on Kepone. Moreover, an admission of responsibility for the working conditions at LSP and for the resulting injuries to his employees does not make Mr. Moore the culprit in the Kepone disaster, which had far broader ramifications than the injuries at the LSP plant. The far-reaching impact of Kepone on the environment (the James River and the Chesapeake

Bay, for example) were part of the Kepone disaster, and Mr. Moore's OSHA admissions are limited to the LSP workplace. Accordingly, Mr. Moore is not collaterally estopped by the OSHA admissions from proceeding with his claim of defamation against Allied. The truth of Allied's statements and their defamatory nature are matters which must be determined at trial.

In summary, for the reasons set forth in the Court's Opinion of July 17, 1979, Count I is DISMISSED as time-barred, except insofar as it alleges intentional infliction of emotional distress; Counts II and III are DISMISSED; Count IV is DISMISSED as time-barred; Count V is DISMISSED except insofar as it attempts to hold Allied liable for republications made on or after July 1, 1976; Counts VI and VII are DISMISSED as time-barred. For the reasons stated in this Opinion, Count I of plaintiff's Complaint, insofar as it alleges intentional infliction of emotional distress, is DISMISSED on the basis of collateral estoppel. Plaintiff is not collaterally estopped from maintaining a cause of action for the republications of the defamatory statements alleged in Count V.