# Richmond

## Lee Harris and Mildred Harris v. Diamond Construction Company, et al.

January 14, 1946.

Record No. 3037.

Present, All the Justices.

The opinion states the case.

*Simeon M. Atkinson*, for the appellants.

*John G. May, Jr.*, and *Robert Lewis Young*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On February 14, 1945, Sam F. Harris, a colored youth, eighteen years old, while employed as a helper at West Point, Virginia, by the Diamond Construction Company, was killed. The decedent's parents, Lee Harris and Mildred Harris, executed a writing employing Douglas S. Mitchell, a local attorney, as their counsel to prosecute "their claim as dependents" against the decedent's employer. A claim for compensation was promptly filed with the Industrial Commission, and in due time the matter came on to be heard before Deputy Commissioner Robinson. According to the record neither claimant appeared at the hearing, but only Mr. Mitchell, their attorney, and the adjuster for the insurance carrier were present. Since the ultimate determination of the matter turns on just what occurred at this hearing,

the proceedings, as shown by the reporter's transcript, are copied in the margin.[1]

On March 26, 1945, Commissioner Deans, for the Commission, rendered an opinion finding the facts in accordance with the statements of counsel for the respective parties made at the hearing. On the same day an award was entered directing the payment of the sum of $700 to the claimants, subject to the deduction of the attorney's fee of $100. In accordance with the usual practice of the Commission, notice of this award was mailed to the claimants personally, as well as to their counsel.

On May 14, 1945, the parents of the deceased filed a petition before the Commission, setting forth that the decedent had been killed at the time and under the circumstances stated; that the petitioners had employed Mr. Mitchell as their attorney to represent them in the prosecution of their claim for compensation against the Diamond Construction Company; that during the investigation which their attorney had made the petitioners told him that the decedent "was their main financial support," that he was the "sole support of his infant sister, sixteen years old, and her illegitimate child," and that he "was also helping to support

---

[1] "By Mr. Mitchell: I am counsel for the claimants in this case which arose out of the accidental death of Sam F. Harris on February 14, 1945, while in the employ of Diamond Construction Company. Death occurred instantaneously. The insurance carrier, I am informed, has assumed the burial expense and the $150 has already been paid. Lee Harris and Mildred Harris were the parents of the said Sam F. Harris and are claiming compensation as partial dependents.

"By Comr. Robinson. Can we agree on an average weekly wage applicable in this claim?

"By Mr. Crum: While the employer's first report shows a wage of $35.00 per week, this is not applicable inasmuch as this employee had worked for various employers during the year preceding the accident and his duties were those of a laborer working approximately thirty weeks and earning $573.76 so that we agree on an average wage of $19.70.

"By Mr. Mitchell: That is agreeable.

"By Comr. Robinson: Mr. Mitchell, have you any data as to the income of this family and the amount necessary for its support?

"By Mr. Mitchell: This is a colored family and we can all appreciate how difficult it is to secure tangible information. The father was em-

another infant sister." It was further alleged that upon being informed of the amount of the award the petitioners "immediately" advised their attorney that "such a settlement" was not agreeable to and would not be accepted by them.

The prayer of the petition was that the award of March 26, 1945, which, it was alleged, was based upon an unauthorized compromise of petitioners' claim against their son's employer, "be set aside," and that petitioners "be given a hearing by the Industrial Commission of Virginia, after proper notice," in order that they might "produce evidence" in support of the allegations made in the petition.

In the meantime, Mr. Mitchell had withdrawn as counsel in the case and the petition just referred to was presented to the Commission by claimants' present counsel.

The petition was promptly heard by the full Commission which, on May 25, 1945, through Commissioner Nickels, its Chairman, rendered an opinion declining to reopen or review the matter and affirming its previous award. The

ployed, the mother also worked, and there was one brother over twenty-one who also worked and contributed to the support of the family along with the deceased. The earnings of the father, the other brother, and the deceased were approximately the same. The mother did outside work and had an income so that we can consider that the deceased contributed one-fourth of the amount necessary for the support of the parents.

"By Mr. Crum: We, of course, are like Mr. Mitchell. We have been almost helpless in securing any tangible data but from our investigation it would appear that about 25 per cent. dependency would be fair.

"By Mr. Mitchell: We appreciate the fact that the weekly compensation rate would be rather nominal and for this reason would like to have same paid in a lump sum.

"By Comr. Robinson: On a wage of $19.70, a total dependent would be entitled to $10.80. Where there is a 25 per cent. dependency the weekly compensation rate would be 25 per cent. of $10.80, or $2.70 per week and this would be payable over a period of three hundred weeks and if paid by lump sum the net amount would be $700.

"By Mr. Mitchell: This is agreeable.

"By Mr. Crum: We will accept an award on this basis.

"By Comr. Robinson: An attorney's fee will, of course, have to be deducted from this amount and in view of the compensation recovery and the amount of time spent in the preparation of the claim, the Commission will allow a fee of $100."

Commission treated the petition as "an application for review" under section 60 of the Workmen's Compensation Act (Michie's Code of 1942, section 1887 (60) ). Since, it said, such application had not been filed within the period of seven days from the date of the award of March 26, 1945, as provided in that section, it came too late.

Moreover, the opinion held that on the merits the record failed to show that the petitioners were entitled to have the award vacated. It pointed out that the award was not based upon an unauthorized compromise, but upon "an agreed statement of facts" which the petitioners' counsel had the right to make, and had made, after a careful investigation of the matter.

From an award based on this opinion the present appeal has been taken.

The first question presented to us is whether the Industrial Commission had jurisdiction to hear the petition praying for a vacation of the award of March 26, 1945.

The appellees insist that since the petition was not filed within seven days from the date of the award of March 26, that award became final and the Commission had no authority under section 60 of the Act (Michie's Code of 1942, section 1887 (60) ) to review the matter. If the petition be treated as "an application for review" under section 60 of the Act, then that position is correct. *Merrimac Anthracite Coal Corp.* v. *Showalter*, 158 Va. 227, 229, 163 S. E. 73. But, in our opinion, the petition is not such an application. It is, in effect, an application to set aside and vacate an award which the petitioners claim was void because it was based on an unauthorized compromise of their claim.

The Virginia Workmen's Compensation Act contains no express provision authorizing the Commission to entertain such a petition. Has it the implied authority to do so?

Some courts take the view that the judicial functions of tribunals of this character are limited by the express terms of the act, and that they have no implied powers beyond those expressly granted them by the legislature. Conse-

quently, these courts hold that an award procured through fraud or mistake can not be vacated in a proceeding before the commission, but that the parties must resort to a court of equity in an independent suit for relief. Typical of such cases are *Luyk v. Hertel*, 242 Mich. 445, 219 N. W. 721, 722; *Chittenden v. Jarvis*, 68 S. D. 5, 297 N. W. 787, 789, citing authorities *pro* and *contra*.

On the other hand, the highest court of Indiana, whose opinions in workmen's compensation cases are "peculiarly persuasive" with us,[2] holds that the Industrial Board has the implied power, upon an application seasonably made, to vacate an award procured through fraud or mistake even after the lapse of the period for an application for review.

In the recent case of *Homan v. Belleville Lumber, etc., Co.*, 104 Ind. App. 96, 8 N. E. (2d) 127, the widow and dependents of an employee who was killed in a railroad collision, while driving an automobile for his employer, were awarded compensation. After the award had become final, but while compensation was being paid, the insurance carrier discovered that the widow, as administratrix of the decedent's estate, with the approval of the probate court, had made a compromise settlement with the railroad company in which she had been paid the sum of $500. The insurance carrier promptly filed with the board an application to "correct, vacate and set aside" the award for the reason that it had been procured through "fraud, duress, mistake and gross irregularity." Over the objection of the dependents that it had no jurisdiction to do so, the board reopened the matter and vacated the award previously made on the ground that it "was based upon a mistake of fact and gross irregularity." An award was then entered denying compensation to the dependents because of the settlement which the administratrix had made with the railroad company. From this latter award the dependents appealed.

---

[2] "The holding of the Indiana court is peculiarly persuasive with us because the Virginia act is based upon that of Indiana." *Basham v. Lowe, Inc.*, 176 Va. 485, 494, 11 S. E. (2d) 638, 642, 131 A. L. R. 761, and cases there cited.

The highest court of Indiana upheld the jurisdiction of the Industrial Board to set aside the award, under the circumstances stated, but remanded the case to the board for a full hearing and a determination as to whether the compromise settlement of the administratrix with the railroad company had been canceled, as the administratrix claimed, and whether, as the result of such cancellation, the dependents were entitled to compensation.

In sustaining the jurisdiction of the board to vacate the award, the court pointed out (104 Ind. App. 96, 8 N. E. (2d), at page 130) that: " * * * the establishment of such administrative agencies as the Industrial Board was for the purpose of taking away from the courts and giving to an administrative agency the power to adjust disputes of the character here involved. * * * Great dissatisfaction had arisen in the manner in which this class of cases was handled by the courts and the people sought to establish a more expeditious and surer method by which those who were injured in industry could receive something for such injury. * * *

" * * * Throughout the entire act it is obvious that the people through their law making agency intended that the Industrial Board, which they created, should have *full, complete and absolute administration of such law.* (Emphasis by the court.) That resort was not to be had to the courts until the administrative process had been completely exhausted. * * * "

Continuing, it is said (104 Ind. App. 96, 8 N. E. (2d), at page 132): " * * * our inevitable conclusion must be that one of the ends sought was the elimination of costly processes of the law prior to its enactment. If the Industrial Board here did not have the power to decide its jurisdiction and litigants must be forced into courts there would be no saving of time or expense and no different condition would obtain than did prior to the enactment of this law. We believe it was the intention of the legislature, and if not the specific intent at least the general one, as gathered from the act as a whole, that matters of this kind are incidental to the administration of this act and should be passed upon by the board.

"It is our belief that we should say and by this opinion do say that whenever in the processes of the administration of this act there is called to the attention of the board matters which show that the board was without jurisdiction that it should pass upon the question and if those involved are not satisfied then that action can be reviewed finally by this court."

Although there was a sharp dissent in the case. the subsequent decisions of the court adhere to the majority view. See *Albrecht Co.* v. *Michaw,* 108 Ind. App. 407, 29 N. E. (2d) 334, 336; *Terre Haute Paper Co.* v. *Price,* 113 Ind. App. 578, 47 N. E. (2d) 166, 169.

Upon the same principle the North Carolina and South Carolina courts have held that despite the fact that there is no express statutory provision to that effect, the Industrial Commissions of those States have the implied power to grant and hold a rehearing of their former decisions. See *Butts* v. *Montague Bros.,* 208 N. C. 186, 179 S. E. 799, 801; *In re Crawford,* 205 S. C. 72, 30 S. E. (2d) 841, 850.

We agree with the reasoning of the Indiana court which strikes us as the more liberal view and the one more nearly in harmony with the purposes of the Workmen's Compensation Law of our State.

It seems to us that when the General Assembly established the Industrial Commission for the summary disposition of cases arising out of industrial accidents, it intended that that tribunal should have jurisdiction to do full and complete justice in each case. It granted to the Commission the power and authority not only to make and enforce its awards, but to protect itself and its awards from fraud, imposition and mistake.

It does not appeal to us as being either logical, reasonable, or within the spirit of the Act to say that the Commission has the jurisdiction and authority to hear summarily claims for compensation, to make awards thereon, to enforce them, and yet when it develops that an award has been procured through fraud or mistake the aggrieved party, in order to get relief, must resort to an independent suit in equity—

with its possible problems of venue and jurisdiction of the parties, incidental expense, delays, and right of appeal—and then, if successful in that proceeding, he must return to the Commission for a hearing of his claim on the merits.

On the contrary, it seems far more consonant with the spirit and purposes of the Act to say that the General Assembly intended that the same tribunal which was empowered to hear in a summary manner claims for compensation, was likewise authorized and empowered to determine in a similar manner whether one of its awards should be vacated and set aside on the ground that it had been procured through fraud or mistake.

Accordingly, we hold that the Industrial Commission has the implied power, incidental to those expressly granted, to entertain and hear an application, seasonably presented, to vacate and set aside an award procured through fraud or mistake. Whether an application is seasonably made must necessarily depend upon the facts and circumstances of the particular case. Such application need not be filed within the seven days allowed by section 60 of the Act (Michie's Code of 1942, section 1887(60) ). This section applies to the filing of an application for review by the full Commission of an award made by a single commissioner. Application to vacate an award is not, strictly speaking, an application to review within the contemplation of this section. The award sought to be vacated may have been entered by the full Commission itself, in which case there would be no right of review under this section.

These principles apply to the case at bar. It is true that there is no claim that the award here was procured through fraud or collusion. Indeed, the petition alleges that it was based on the "honest mistake" of the appellants' attorney in making an unauthorized compromise of their claim. But it is settled that an attorney at law, by virtue of his employment as such, has no authority to compromise his client's claim. *Dawson* v. *Hotchkiss,* 160 Va. 577, 581, 582, 169 S. E. 564, and authorities there cited; 5 Am. Jur., Attorneys at Law, sec. 98, p. 318 *ff.* Hence, a judgment based on an

unauthorized compromise may be vacated "on seasonable application." *Dwight* v. *Hazlett*, 107 W. Va. 192, 147 S. E. 877, 880, 66 A. L. R. 102.

Consequently, we are of opinion that the Industrial Commission should have taken jurisdiction of the appellants' petition and should have inquired whether the award complained of ought to have been set aside on the ground that it was based on an unauthorized compromise.

■ It is clear that the application here for the vacation of the award was seasonably made. It was filed within sixty days of the award complained of, and before any part of the compensation had been paid, and hence the parties could have been put in *statu quo*.

While, as has been stated, the opinion indicates that the Commission was doubtful of its jurisdiction to determine the matter, nevertheless it reviewed the facts and held that the award was not based on an unauthorized compromise, but upon the agreement by claimants' counsel to certain facts which he had obtained from them and which he had the authority to stipulate during the hearing.

■ This conclusion of the Commission, in our opinion, was sound. While, as we have seen, an attorney at law, by virtue of his employment, has no authority to compromise the claim of his client without the latter's consent, he has full authority to act on behalf of his client in the conduct of the litigation before the court, and by virtue of such authority he may make admissions of or stipulations as to facts, the effect of which is to dispense with the proof of such facts. Wigmore on Evidence, 3d Ed., Vol. 9, sec. 2594, p. 597; Jones' Commentaries on Evidence, 2d Ed. Rev., Vol. 2, sec. 955, p. 1759, sec. 956, pp. 1761-2-3; Mechem on Agency, 2d Ed., Vol. 2, sec. 2162, p. 1740; 7 C. J. S., Attorney and Client, sec. 100, b, pp. 920, 921. Such admissions and stipulations, made honestly and in good faith, are everywhere encouraged by the courts.

For a clear exposition of the difference between a compromise settlement, which an attorney is unauthorized to make, and an agreed stipulation of facts which he may

enter into, see *Christy* v. *Atchison, Topeka, etc., Ry. Co.,* 233 F. 255.

We agree with the Commission that a careful consideration of the transcript of the proceedings before Deputy Commissioner Robinson shows that Mr. Mitchell, as attorney for the claimants, did not compromise his clients' claim in an unauthorized manner, but, on the contrary, that he merely stipulated as to certain facts which he had obtained from them as the result of an interview which the petition for a rehearing admits took place, and which stipulation, by virtue of his employment, he had the right to enter into at the trial of the case.

Mr. Mitchell first stipulated that the deceased employee had a weekly wage of $19.70. This was arrived at by dividing the total amount of his earnings, $573.76, by the "approximately thirty weeks" he had worked during the previous year. See section 2 (c) of the Act (Michie's Code of 1942, sec. 1887 (2), (c) ). While the petition for a rehearing alleges that petitioners "believe that they will be able to prove" that the decedent's weekly wage was "more than $19.70," the basic figures are not controverted, nor are we enlightened as to what the actual wage was or upon what facts the petitioners rely to show that the wage was higher than the stipulated amount.

Mr. Mitchell further stipulated that four members of the deceased employee's family, namely, the father, the mother, an elder brother, and the decedent himself, worked, and that each contributed "approximately the same" towards the support of the household.

While the petition for a rehearing alleges that the decedent was "the main financial support" of his parents and the other members of the family, this is merely a conclusion. The petition does not disclose whether either or both of the parents worked, and if so, what they contributed to the household. It neither affirms nor denies Mr. Mitchell's admission that the elder brother worked and contributed to the support of the family. Indeed, it makes no mention whatever of this member of the family.

Cases before the Industrial Commission are frequently expedited or disposed of by stipulations of this character. This we know by our constant inspection of the records which come to us from this tribunal. Such stipulations save both time and expense for the litigants and are to be encouraged and not condemned.

Of course, we do not mean to imply that an attorney, without the consent of his client, may surrender any substantial rights of the latter. But here a close inspection of the record, including the allegations of the petition for a rehearing, convinces us that this was not the case. On the contrary, we are convinced, as the Commission held, that Mr. Mitchell was within his rights in agreeing to those facts which he had obtained from his clients.

Having agreed on the amount of the weekly wage and the percentage of dependency, the determination of the amount to be paid was merely a matter of mathematical calculation under the terms of the Act. That the amount of the award was small and disappointing to the claimants is due entirely to the provisions of the Act, and to no waiver of their rights by, or the lack of diligence on the part of, their attorney, Mr. Mitchell.

The appellants argue that section 59 of the Act (Michie's Code of 1942, sec. 1887(59) ) guarantees to them "a right to a hearing" of which they have been deprived. This section provides: "The Commission or any of its members shall hear the parties at issue and their representatives and witnesses and shall determine the dispute in a summary manner. * * * The parties may be heard by a deputy, in which event he shall swear or cause the witnesses to be sworn and shall transmit all testimony to the Commission for its determination and award."

This, of course, does not mean that the witnesses must be heard *in extenso* to prove matters upon which the parties may agree. Even in courts of law where the procedure is technical, cases are frequently disposed of on such stipulations of facts. A trial conducted in this manner

is no less a "hearing" than is one at which the witnesses testify at length.

The contention is made that since the award makes no mention of the two infant sisters of the decedent, they have not had their "day in court."

The legal obligation to support the infant daughters was upon the father and not upon the deceased brother, and in the absence of a showing to the contrary, the presumption is that the father discharged this duty. *Clark* v. *Appalachian Power Co.*, 153 Va. 86, 90, 91, 92, 149 S. E. 613.

Here the petition for a rehearing does not allege that the father failed to perform his legal duty to support his infant daughters, or that he was unable or unwilling to do so. It would have strained the credulity of the Commission to have asked it to believe that the members of this colored family, living together, had an arrangement whereby the infant daughters derived no benefit from the home maintained presumably by the father, and received no support from the incomes of either parent or that of an elder brother.

Moreover, the entire proceedings below seem to have been conducted for the benefit of the infant sisters as well as the parents of the deceased employee. If this be not so, then the rights of the infants are not before us now, for they are not nominal parties either to the petition for a rehearing or to the petition for appeal. The practice before the Commission in cases of this character is for one or both of the parents to prosecute claims for compensation on behalf of themselves and other minor dependents. We recognized and approved this practice in *Drinkard* v. *Drinkard-Payne Buick Corp.*, 181 Va. 253, 254, 24 S. E. (2d) 421, 422. That course was followed here.

In this situation, we are of opinion that the infant sisters of the deceased employee are as completely concluded by the award of March 26, 1945, sought to be set aside, as are the parents.

On the whole we find no error in the Commission's award of May 25, 1945, refusing to reopen or vacate the previous award of March 26, 1945, and the same is

*Affirmed.*