**Alexandria**

ROBERT P. HUDOCK

v.

INDUSTRIAL COMMISSION OF VIRGINIA

No. 0294-85

Argued October 9, 1985

Decided February 18, 1986

COUNSEL

Robert P. Hudock (Robert P. Hudock & Associates, on brief), for appellant.

Malcolm R. West, Assistant Attorney General (Gerald L. Baliles, Attorney General; Walter A. McFarlane, Deputy Attorney General, on brief), for appellee.

OPINION

DUFF, J.—This appeal questions the authority of the Industrial Commission to hold an attorney in contempt for charging a claimant a fee in excess of that awarded by the Commission. After a full hearing, the Commission concluded it had such authority, held the attorney in contempt, and ordered him to refund to the claimant the fee collected in excess of that awarded. We agree with this conclusion and affirm.

## I. BACKGROUND

The claimant, Bernice J. Smith, not a party to this appeal, was injured in 1976 while employed by the Fairfax County School Board. On May 19, 1981, Robert P. Hudock (appellant), an attorney at law, filed a petition with the Industrial Commission on behalf of the claimant requesting approval, pursuant to Code § 65.1-45, of a proposed compromise settlement of $15,000 for her compensation claim.

The petition was duly executed by the claimant and her employer and was also endorsed by Mr. Hudock under language stating that he concurred in the settlement as being in the claimant's best interest. The petition further requested the Commission to award a reasonable attorney's fee for legal services rendered, such fee to be paid directly from the settlement award.

The petition was accompanied by a proposed order which acknowledged the statements made therein and expressly found that the settlement was in the claimant's best interests. The order approved the settlement and awarded a fee of $2,500 to "be deducted and paid to Robert P. Hudock, Esquire, as and for counsel fees; and the remaining amount of $12,500 Dollars shall be paid to the employee in one lump sum." The amount of the fee and the balance to be paid to the claimant were filled in by the chief deputy commissioner in blank spaces provided in the order. The order was endorsed by all parties as well as by the appellant and was entered on May 25, 1981.

On February 2, 1984, the claimant wrote to the Commission inquiring about the attorney's fees that she had been required to pay Mr. Hudock. She stated:

> I received a check in the amount of $12,500. In addition to the sum of $2,500 which was deducted, I was also instructed by attorney to pay him another $2,500 which made a total of $5,000 which was paid for attorney fee.

Promptly upon receipt of this correspondence, the Commission made various inquiries of appellant to determine the reason for the discrepancy. The record reveals that the $5,000 fee was based on a one-third contingency fee agreement that had been signed by Ms. Smith and Mr. Hudock at the time the latter had been re-

tained. This agreement was not made known to the Commission nor was a request for a specific fee made by the appellant at the time the settlement petition was submitted.

On March 26, 1984, the deputy commissioner wrote to the appellant, requiring him to refund $2,500 to the claimant, and stating that the collection of that amount in excess of the fee awarded by the Commission violated Code § 65.1-102.[1] The appellant objected that the requirement imposed by the letter was beyond the Commission's authority and violated his right of due process. Thereupon, after proper notice to Mr. Hudock, the Commission scheduled a hearing in the matter of *Smith* v. *County of Fairfax School Board* to determine whether Mr. Hudock should be held in contempt.

Based upon the evidence, the Commission found that Mr. Hudock's action in collecting a fee in excess of the approved amount constituted contempt of the Commission's order of May 25, 1981. The order recited that the Commission had the power to punish for contempt, but did not impose sanctions other than to require appellant to return $2,500, with interest, to the claimant. Upon review by the full Commission, the opinion was affirmed and this appeal followed.

Appellant raises multiple objections to the Commission's action in finding him in contempt and ordering the return of the $2,500 fee. However, in our view, the alleged errors are encompassed in two basic issues: (1) the authority of the Industrial Commission to limit the amount of attorneys' fees; and (2) the authority of the Commission to punish for contempt by requiring the attorney to pay back the excess fee charged.

## II. THE COMMISSION'S AUTHORITY TO LIMIT ATTORNEYS' FEES

Code § 65.1-102 provides that fees of attorneys shall be subject to the approval and award of the Commission. In *Bee Hive Mining Co.* v. *Industrial Commission,* 144 Va. 240, 132 S.E. 177 (1926), the Supreme Court reviewed section 65 of the Workmen's Compensation Act, which provided that fees of attorneys "shall be

---

[1] Code § 65.1-102 provides that "[f]ees of attorneys and physicians and charges of hospitals for services, whether employed by employer, employee or insurance carrier under this Act, shall be subject to the approval and award of the Commission."

subject to the approval of the Commission." The 1926 statute did not contain the additional authority to *award* fees as does Code § 65.1-102. Nonetheless, the Court construed the provision as follows:

> This section was intended, as we construe it, to give the Industrial Commission the power to pass on attorneys' fees . . . in other words, it was the intent of the act not to allow an attorney . . . to overcharge for his services.

*Id.* at 242, 132 S.E. at 177.

In *Saylor* v. *Old Dominion Veneer Co.,* 13 O.I.C. 277 (1931), pursuant to a previous contingency agreement, the claimant and the attorney divided the proceeds from the compensation award on a fifty percent basis. Subsequently, the claimant repudiated the contingency agreement and complained of an excessive fee to the Commission. The Commission held that such agreements "are contrary to the intent and purpose of the Workmen's Compensation Law of Virginia," and went on to note that the statute provided that all fees of attorneys were subject to the approval and award of the Industrial Commission. At the time of the *Saylor* decision, the statute contained the identical language found in Code § 65.1-102.

■ Although *Saylor* is the decision of an administrative agency, in the fifty-four years since that decision, the General Assembly has not changed the substantive meaning of Code § 65.1-102. The legislature is presumed to be cognizant of an agency's construction of its statute and when such construction continues without alteration, it is presumed that the legislature has acquiesced therein. *Peyton* v. *Williams,* 206 Va. 595, 600, 145 S.E.2d 147, 151 (1965) (citing *Smith* v. *Bryan,* 100 Va. 199, 204, 40 S.E. 652, 654 (1902)).

■ We find no merit in the appellant's assertion that Code § 65.1-102 violates his rights of equal protection and due process under the Fourteenth Amendment of the United States Constitution. In his treatise, "The Law of Workmen's Compensation," Professor Larson notes that every state has some form of statutory provision subjecting claimant's attorneys' fees to the supervision of the Commission or Board. 3 A. Larson, *The Law of Workmen's Compensation* § 83.13(a) (1983).

In *Yeiser* v. *Dysart,* 267 U.S. 540, 541 (1925) the United States Supreme Court affirmed a ruling of the Nebraska Supreme Court, holding that a similar statute regulating attorneys fees was a proper exercise of the police powers of the state and did not violate the Fourteenth Amendment of the United States Constitution. *See also Crosby* v. *State Workers Compensation Board,* 57 N.Y.2d 305, 456 N.Y.S. 680, 442 N.E.2d 1191 (1982); *Samaha* v. *State,* 389 So. 2d 639 (Fla. 1980); *Buckler* v. *Hilt,* 209 Ind. 541, 200 N.E. 219 (1936).

In denying a challenge based on equal protection grounds, the court stated in *Crosby* that the legislature could properly determine that employers and compensation carriers were not subject to the same economic difficulties as an injured employee and, therefore, were not in need of similar protection. Although Code § 65.1-102 provides that fees of attorneys employed by claimants, employers or insurance carriers shall be subject to approval and award of the Commission, in practice, the Commission does not undertake to regulate fees of the employer's counsel, reflecting the views expressed in *Crosby.* We find that a rational basis exists for such distinction and the Commission's practice is not constitutionally infirm.

██ Considering the authorities cited and the overall purpose to be served by the enactment of Workers' Compensation legislation, we hold that the Industrial Commission's practice of awarding fees to claimant's attorneys is properly within its statutory and administrative responsibilities. Further, we hold that in a Workers' Compensation case, no fee for legal services in excess of that approved by the Commission may be charged to a claimant.

### III. THE CONTEMPT ISSUE

The second issue presented involves the authority of the Industrial Commission to punish by contempt for disobedience of its orders. The hearing commissioner's opinion, which was approved by the full Commission, noted that the order of May 25, 1981, expressly provided for apportionment of the approved settlement of $15,000 between the claimant and her attorney in a manner that was in the best interests of the claimant and in accord with Code § 65.1-93. It specifically found that the actions of appellant in collecting from the claimant an amount in excess of the approved attorney's fees constituted contempt of the May 25, 1981,

order of the Commission. The opinion also found that the appellant further failed to provide for the best interests of his client and willfully acted to evade the provisions made for her in the order. The Commission relied on *Laing* v. *Commonwealth,* 205 Va. 511, 137 S.E.2d 896 (1964), in noting that when one shows by his conduct a deliberate and studied effort to disobey a valid order of a court, he subjects himself to punishment for contempt. As indicated, other than requiring the repayment to the claimant of the fee approved, the Commission did not impose sanctions.

The appellant contends that the May 25, 1981, order merely specified that certain moneys were to be removed from the settlement funds and paid to him as a fee, that the order did not require him to do anything, that there is no statutory authority for the Commission to act three years after the settlement had been approved, and that there is no authority for the Commission to order repayment of the fee to the claimant.

█ Code § 65.1-20 specifically provides that the Commission shall have the power, as vested in courts and judges by Code § 18.2-456, to punish for contempt or disobedience of its orders. Code § 18.2-456(5) provides that a judge may issue attachments for contempt in cases of "[d]isobedience or resistance of an officer of the court . . . to any lawful order of the court."

█ The General Assembly established the Industrial Commission for the summary disposition of cases arising out of industrial accidents and intended that it have jurisdiction to do "full and complete justice" in each case. *Harris* v. *Diamond Construction Co.,* 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946). In *Harris,* the Supreme Court was presented with the issue whether the Commission had the implied power to review and vacate an award upon a petition presented beyond the statutory time for normal review. Recognizing that some courts take the view that administrative tribunals of this character have no implied powers beyond those expressly granted by the legislature, the Supreme Court adopted the more liberal view that the Commission had the implied power, incidental to those expressly granted, to entertain and hear an application, seasonably presented, to vacate and set aside an award procured through fraud or mistake. The *Harris* court further held that the General Assembly "granted to the Commission the power and authority not only to make and enforce its awards, but to protect itself and its awards from fraud, imposition

and mistake." *Id.* at 720, 365 S.E.2d at 577. We hold that the Commission, as a quasi-judicial body within the area of its jurisdiction, has the power of contempt over those in disobedience of its lawful orders. This is a concomitant of judicial power, necessary to the proper and effective discharge of its duties. *Segrella* v. *Workmen's Compensation Commission,* 91 R.I. 282, 162 A.2d 810 (1960).

> Without the authority to cite and punish for contempt of its decrees and orders the Commission would be virtually powerless to enforce them.

*Id.* at 287, 162 A.2d at 813. We find such authority not only in Code § 65.1-20 but also in the philosophy underlying *Harris* and similar decisions.

We do not agree with appellant that the doctrine of laches should apply because of the delay from settlement to the finding of contempt. Upon being advised by the claimant of the additional fee that had been charged, the Commission moved expeditiously. Whatever merit a plea of laches might have in a civil contest solely between the claimant and the appellant, it has no validity under these facts where the fundamental issue was between the appellant and the Commission.

The appellant further contends that he was not a party to the May 25, 1981, order, and that Code § 65.1-100.1 prohibits the Commission from enforcing its orders. While it is true that the appellant was not a party litigant, he was an officer of the court, authorized to practice before the Commission, and was a signatory to the petition for approval of the settlement and to the proposed order that he drafted and submitted to the Commission. Clearly, he was obligated to comply with the requirements of that order, one of which was that he receive a fee of $2,500. The Commission held that he had not complied with the order and we agree.

Finally, the appellant contends that Code § 65.1-100.1[2] prohibits the Commission from enforcing its orders. Contrary to this as-

---

[2]  § 65.1-100.1. Enforcement, etc. of orders and awards.—Orders or awards of the Commission may be recorded, enforced, and satisfied as orders or decrees of a circuit court upon certification of such order or award by the Commission. The Commission shall certify such order or award upon satisfactory evidence of noncompliance with the same.

sertion, we hold that the Commission has full authority to enforce its orders and protect itself from deception. While the language of this code section is permissive and provides that a party may enforce an award in court, it must be read and considered in *pari materia* with the Commission's power pursuant to Code § 65.1-20 to punish for disobedience of its orders. We hold that the Commission acted within its discretion and authority when it required the return of the excess fee charged.

Finding no merit to the errors assigned, the order of the Commission is

*Affirmed.*

Cole, J., and Moon, J., concurred.