UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Friedman and Senior Judge Clements

NICOLE E. COLEMAN

                                                MEMORANDUM OPINION[*]

v.      Record No. 1146-23-2                            PER CURIAM
                                                DECEMBER 3, 2024

WILLIAM T. COLEMAN

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

(Nicole E. Coleman, on brief), *pro se*.

No brief for appellee.


Nicole E. Coleman (wife), *pro se*, appeals the circuit court's final decree awarding her a

divorce from William T. Coleman (husband), equitably distributing their marital assets, and

awarding her child support. Wife asserts that the circuit court erred by finding that: the parties

agreed on the value of their marital home; husband had separate equity in the home; and a certain

home equity line of credit constituted marital debt. She further contends that the circuit court erred

in calculating the parties' gross incomes for 2019, 2020, and 2021 to determine child support.[1]

Considering the record and wife's brief, we affirm the circuit court's equitable distribution of the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Wife also argues that the circuit court erred in calculating her reasonable work-related childcare expenses. But that argument is beyond the scope of her assignment of error, which challenges only the circuit court's "calculation of the party's [sic] gross incomes." Consequently, we do not consider her argument concerning work-related childcare expenses on appeal. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."); *Miles v. Commonwealth*, 78 Va. App. 73, 85 n.6 (2023) (declining to address an argument beyond the scope of an assignment of error).

parties' marital estate and its child support award for 2019.[2] But we reverse the circuit court's award of child support for 2020 and 2021 and remand the case for further proceedings.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting [that party] the benefit of any reasonable inferences." *Shah v. Shah*, 70 Va. App. 588, 591 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

The parties filed for divorce in 2019 after being married for approximately 13 years. Although each initially asserted fault grounds for the divorce, they ultimately moved for a divorce on the alternative ground that they had lived separate and apart for more than one year. Code § 20-91(A)(9)(a). The parties agreed that wife would have sole legal and physical custody of their child, each would retain their separate bank accounts, and each would be solely responsible for their individual debts. The case then proceeded to trial for child support and equitable distribution of the parties' remaining marital estate, including their home and a home equity line of credit.

I. Marital home and home equity line of credit

In 2004, while the parties were engaged, husband purchased what became the parties' marital home. Husband made a $19,700 down payment on the purchase of the home with a check issued from his personal bank account. In 2007, after the parties had married, husband refinanced the home and acquired a $40,000 home equity line of credit from Wells Fargo (the original HELOC), which he used to repay one of two mortgages on the home.

In 2016, husband added wife to the title of the home. The parties then jointly procured a second home equity line of credit from BB&T (the second HELOC). The parties used $39,894.92 from the second HELOC to settle the original HELOC and $21,916.89 to pay off two of

---

[2] Husband did not file a brief, and wife waived oral argument in this case.

husband's personal credit cards that had been used for improvements to the home's outdoor living space. According to husband, the second HELOC was used for "debt consolidation and home improvements."

On October 1, 2020, real estate appraiser Alexander Uminski estimated that the home's market value was $400,000. The week before trial, the parties filed proposed distribution schedules, each stating that the value of the home was $439,500, which was the 2022 tax assessed value of the home. Although the parties scheduled their case for a one-day trial on March 4, 2022, they were unable to present all their evidence in a single day, so the circuit court continued the trial to May 18, 2022.

On May 8, 2022, Uminski updated his appraisal, opining that the market value of the marital home was $550,000. When trial resumed, wife called Uminski to testify regarding his updated appraisal. Husband objected to Uminski's testimony arguing that the parties had agreed on the value of the home, as evidenced by their proposed distribution schedules. Wife responded that she had used the $439,500 value as a "placeholder" but had not agreed on the value of the home, which had increased due to "rising interest rates." The circuit court took husband's objection under advisement and admitted Uminski's updated appraisal.

II. Child support

The parties stipulated that husband owed wife $7,122 for child support from July 2019 to December 2019.[3] In support of their stipulation, the parties submitted a child support guideline worksheet stating that husband's 2019 gross income was $7,345 per month, or $88,140 annually. Notwithstanding their stipulation, husband introduced bank statements showing that $59,851.34 had

---

[3] The parties' stipulation was contingent on the circuit court finding that they had separated by July 2019. The circuit court ultimately found that the parties separated in January 2019, which is uncontested on appeal.

been deposited into his personal bank account during 2019, which he testified represented "all of the funds that [he] received" from his landscaping business that year.

Wife introduced expert testimony from Desiree Lee, a certified public accountant who reviewed husband's personal and business bank account statements, credit card statements, and tax returns to determine his income in 2020 and 2021. Lee testified that husband's business had a gross revenue of $263,948.84 in 2020. According to her, husband used $171,282.04 to pay for business expenses, such as contractor payments, cost of goods, insurance, and utilities. In addition, husband paid some personal expenses "out of the business," including mortgage payments, life insurance policy premiums, hotel room rentals, home utility payments, and food purchases. After deducting the business expenses from the gross revenue, Lee opined that husband's business had a net income of $92,666.80 in 2020, which constituted husband's income for that year.

Using the same methodology, Lee opined that husband's business had a gross revenue of $311,860.08 and a net income of $102,957.70 in 2021. She conceded, however, that she had not reviewed husband's 2021 credit card statements. Lee testified that husband paid $33,853.35 from his business bank account to his credit card accounts during 2021 and assumed approximately half of that amount had been used to pay for personal expenses.

During cross-examination, Lee admitted that she had not spoken to husband about his business expenses and that she classified some of the expenses based on information she received from wife. Lee also acknowledged that it is customary for employers to "[s]ometimes" buy their employees lunch but maintained that husband purchased food with his credit cards "[m]ultiple times a day" and did not claim all the meals as business expenses on his 2020 tax return. Lee testified that she did not know if husband "cheated himself by not reporting" all his meal expenses on his tax return.

Husband presented expert testimony from John Murray, the certified public accountant who prepared his 2020 individual and business tax returns. Husband's 2020 business tax return reflected that it had a gross income of $261,102 and a gross profit of $92,726. After deducting various expenses from the business's gross profit, Murray determined that the business had a net income of $30,977 in 2020.

Husband also introduced copies of bank statements showing that $54,971.69 had been deposited into his personal bank account during 2020. Reviewing the bank statements for the first time, Murray opined that "if these deposits originated from [husband's business], [he] would have [an] income of $54,971" in 2020. Husband then introduced copies of bank statements showing that $79,833.88 had been deposited into his personal bank account during 2021. Murray testified that he could not determine husband's income from his 2021 personal bank statements nor render an opinion about the accuracy of Lee's calculation of husband's income for that year.

III. The circuit court's final decree

After considering the evidence and arguments, the circuit court awarded wife a divorce from husband on no-fault grounds. In doing so, the circuit court found that "neither party presented sufficient evidence to establish cruelty, reasonable apprehension of bodily harm, desertion, or adultery."

Before equitably distributing the parties' marital estate, the circuit court expressly addressed each factor enumerated in Code § 20-107.3(E). After addressing each factor, the circuit court found that the marital home constituted hybrid property. It concluded that the equity traceable to husband's down payment constituted his separate property and the remainder of the equity was marital property to be divided equally between the parties. The circuit court further found that the parties had stipulated that the value of the marital home was $439,500, consistent with their pre-trial

distribution schedules.[4]  Finally, the circuit court found that the second HELOC constituted marital debt to be shared equally by the parties because "there was no time frame established as to when" husband acquired the original HELOC and the second HELOC paid off credit cards "used to pay for the improvements to the outdoor space at the marital home."

Addressing child support, the circuit court accepted the parties' stipulation that husband owed wife $7,122 for 2019.  The circuit court found that the parties' incomes "fluctuate[d]" because each was self-employed so it was necessary to average each party's income from 2019, 2020, and 2021 to calculate husband's remaining child support obligation.  In doing so, the circuit court found that both parties "use[d] their business accounts for personal expenses" and therefore "calculated the parties' gross income from their bank statements."  The circuit court thus found wife's average income was $119,339.07 and husband's average income was $64,692.37.  The circuit court did not make any findings of the parties' pre-averaged incomes for 2019, 2020, and 2021.

After considering health insurance and childcare costs, the circuit court ordered husband to pay wife child support in the amount of $909 per month beginning on January 1, 2020, and $894 per month beginning on January 1, 2021.  Considering payments that husband had made during the pendency of the case, the circuit court found that husband's child support arrearages totaled $17,790.49 as of March 13, 2023.

Wife moved the circuit court to clarify which bank statements and deposits it relied on when calculating the parties' gross incomes noting that she had submitted statements from husband's business and personal bank accounts.  She argued that "further specification or delineation [was] needed in order to calculate the court's ruling" because of the "volume of evidence considered in this matter."  At a hearing on wife's motion, the circuit court provided the

---

[4] The circuit court expressly discounted Uminski's updated appraisal because "he based his appraisal on an earlier one and did not return to view the interior of the home prior to rendering his opinion."

parties copies of its calculations—which are not included in the record on appeal—and purportedly identified the bank statements that it considered. The circuit court explained that "essentially . . . any unexplained cash deposit . . . was included as income."

ANALYSIS

I. Equitable distribution

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." *Stark v. Dinarany*, 73 Va. App. 733, 749-50 (2021) (quoting *Wright v. Wright*, 61 Va. App. 432, 449-50 (2013)). Accordingly, the Court will not overturn an equitable distribution award unless we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)).

A. Value of the marital home

Wife contends that the circuit court erroneously found that the parties had agreed to the value of their marital home. She notes that she argued at trial that she had not agreed to the value of the home and that the value stated in her proposed distribution schedule was merely a "placeholder." Wife maintains that the correct value of the home is $550,000, the value reflected in Uminski's updated appraisal. We find no error in the circuit court's judgment.

"[A]dmissions and stipulations, made honestly and in good faith, are everywhere encouraged by the courts." *Harris v. Diamond Constr. Co.*, 184 Va. 711, 722 (1946). The effect of an admission or stipulation "is to dispense with the proof" of the facts admitted or stipulated. *Id.* "[A] party should not be permitted to assert at trial a contention which is contrary to a stipulation to which that party . . . has freely and in good faith agreed." *Se. Tidewater Area*

- 7 -

*Manpower Auth. v. Coley*, 221 Va. 859, 862 (1981). Accordingly, parties are "bound by their factual stipulations." *Fountain v. Commonwealth*, 64 Va. App. 51, 58 (2014).

The record supports the circuit court's finding that the parties stipulated to the value of their marital home for equitable distribution. To begin, each party filed a proposed distribution schedule the week before trial, and both stated that the value of the home was $439,500. Wife's distribution schedule did not indicate that her valuation of the home was a "placeholder" or that she intended to introduce additional evidence of value. Indeed, the only evidence supporting a different valuation that existed before the first day of trial is Uminski's original appraisal report, which valued the home at $400,000 and was nearly two years old when the parties filed their proposed distribution schedules. Moreover, the circuit court discounted Uminski's updated appraisal, which wife relies on to support her alternative valuation. Under these circumstances, the circuit court did not abuse its discretion by finding that the parties had agreed on the value of the home and that wife was bound by her stipulation. *Fountain*, 64 Va. App. at 58.

### B. Husband's separate equity in the marital home

Wife asserts that the circuit court erred by finding that husband had separate equity in their marital home. She claims that husband failed to prove that his $19,700 down payment check had been cashed and emphasizes that the amount of the purported down payment plus the two original mortgages exceeded the original purchase price. She also contends that any separate equity that husband had in the home when he purchased it was withdrawn or transmuted as a part of the original HELOC. Based on the evidence presented, wife argues that the circuit court was "unable to determine the separate amount" of equity attributable to husband's down payment. We disagree.

"Property can be classified as marital, separate, or hybrid." *Hamad v. Hamad*, 61 Va. App. 593, 602 (2013). "Hybrid property involves a mixture of 'part marital property and part separate property.'" *Id.* (quoting Code § 20-107.3(A)(3)). "The party seeking to segregate the separate

property bears the burden of proof to equitably trace the truly separate component." *Id.* "If a preponderance of the evidence fails to do so, the property remains fully marital." *Id.*

Husband testified that he made the down payment on the home with a check from his personal bank account before he married wife. Although he refinanced the home in 2007, the record does not reflect that he withdrew equity from the home when he did so. To the contrary, husband claimed that he used the funds from the original HELOC to pay off a second mortgage on the marital residence. He further explained that the parties used the second HELOC to pay off the original HELOC and credit cards used for "debt consolidation and home improvements." In short, the evidence supports a finding that husband acquired separate equity in the home that had not been withdrawn or transmuted at the time of trial. Accordingly, the circuit court did not abuse its discretion by finding that husband acquired separate equity in the marital home attributable to his down payment.

### C. Marital debt

Wife argues that the circuit court erred by finding that the second HELOC constituted marital debt. She claims that the original HELOC was husband's personal debt because it was "never proven to be used for marital purposes." She reasons that the second HELOC is husband's separate debt because it was used to pay off the original HELOC and his credit cards.

Marital debt includes "(i) all debt incurred in the joint names of the parties before the date of the last separation of the parties . . . and (ii) all debt incurred in either party's name after the date of the marriage and before the date of the last separation of the parties." Code § 20-107.3(A)(5). A court may designate marital debt as separate "to the extent that a party can show by a preponderance of the evidence that the debt, or a portion thereof, was incurred . . . for a nonmarital purpose." *Id.*

Husband testified that he procured the original HELOC after the parties married to refinance mortgages on the marital home. Similarly, husband testified that he used the credit cards at issue for

improvements to the home's outdoor living space. Accordingly, there is evidence in the record to support the circuit court's finding that the original HELOC and the credit card debt constituted marital debt incurred for marital purposes. *Id.* It follows that the second HELOC, which the parties jointly procured, constituted marital debt because it was used to repay the original HELOC and credit card debt. We find no abuse of the circuit court's discretion in classifying the second HELOC as marital debt.

Notwithstanding the circuit court's classification, wife also asserts that the circuit court erred by apportioning the second HELOC debt equally between the parties. She claims that husband abused her and that the circuit court's decision demonstrates that it failed to consider the circumstances leading to the dissolution of the marriage as Code § 20-107.3(E)(5) requires. But the record reflects that the circuit court expressly addressed Code § 20-107.3(E)(5), finding that "neither party presented sufficient evidence to establish" any fault grounds. The trial court's conclusion that there was a lack of evidence does not demonstrate that it failed to consider the circumstances leading to the dissolution of the marriage. Rather, given its express consideration of the statutory factors and evidence, the circuit court did not abuse its discretion by apportioning what it had classified as marital debt equally between the parties. *See Stark*, 73 Va. App. at 750 ("If the circuit court considers all the factors and bases its findings on credible evidence, we will not disturb its decision on appeal." (quoting *Fadness v. Fadness*, 52 Va. App. 833, 842 (2008))).

II.  Child Support

"Child support decisions . . . 'typically involve fact-specific decisions best left in the "sound discretion" of the trial court.'" *Da'mes v. Da'mes*, 74 Va. App. 138, 144 (2022) (alteration in original) (quoting *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015)). So "we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." *Id.* (quoting *Niblett*, 65 Va. App. at 624).

Wife asserts that the circuit court erred in calculating the parties' gross incomes for 2019, 2020, and 2021. Among other things, she argues that the circuit court erred by averaging the parties' incomes, "not calculating the presumptive support [award] based on current year income," and failing to analyze whether the parties' actual incomes "rendered the presumptive award inappropriate or unjust." We agree.

"The starting point for a trial court in determining the monthly child support obligation of a party is the amount as computed by the schedule found in Code § 20-108.2." *Tidwell v. Late*, 67 Va. App. 668, 679 (2017) (quoting *Richardson v. Richardson*, 12 Va. App. 18, 21 (1991)). "The amount of child support under the child support guidelines must be based on the parents' actual gross income." *Id.* (quoting *Niblett*, 65 Va. App. at 625). There is a rebuttable presumption that the guidelines establish "the correct amount of child support to be awarded." *Id.* at 680 (quoting Code § 20-108.1(B)).

A trial court may rebut the presumptive child support award under the guidelines by making written findings "that the application of such guidelines would be unjust or inappropriate in a particular case." Code § 20-108.1(B). In addition, the trial court must "state what the amount of child support would have been pursuant to the guidelines" and "explain 'why the order varies from the guidelines.'" *Tidwell*, 67 Va. App. at 680 (quoting Code § 20-108.1(B)). For example, a trial court may decide to "deviate from the child support guidelines because a party's current gross income does not adequately represent [the] party's ability to provide child support." *Id.* Under such circumstances, the trial court may "average a party's income over a reasonable period of time in order to ascertain [the] party's true earning capacity." *Id.* But it must begin its analysis by determining the actual gross income of each party before it may engage in any averaging. *Id.* at 680-81 (holding that the circuit court erred by averaging father's income before calculating the presumptive amount of child support based on current year income and by failing to "explicitly

- 11 -

analyze whether higher income in prior years manifested a greater earning capacity that rendered the presumptive award inappropriate or unjust").

In this case, the circuit court averaged the parties' incomes for 2019, 2020, and 2021 to calculate its current and retroactive child support awards. It did not calculate the presumptive awards under the guidelines using the parties' actual incomes for each year or explain in writing why the presumptive awards would be inappropriate or unjust as required by Code § 20-108.1(B). Accordingly, we reverse the circuit court's child support awards for 2020 and 2021 and remand this matter for it to first calculate the presumptive child support awards under the guidelines and then determine whether the "application of such guidelines would be unjust or inappropriate."[5] Code § 20-108.1(B). We do not disturb the circuit court's child support award for 2019 given the parties' stipulation as to the amount owed for that year.

CONCLUSION

For the foregoing reasons, the circuit court's equitable distribution award and child support award for 2019 is affirmed. We reverse the circuit court's award of child support for 2020 and 2021 and remand the case for it to calculate the presumptive award of child support for those years and to determine whether the "application of such guidelines would be unjust or inappropriate."[6] *Id.*

*Affirmed in part, reversed in part, and remanded.*

---

[5] We acknowledge that, when calculating a retroactive child support award, a trial court may "use the gross monthly income of the parties *averaged over the period of retroactivity*." Code § 20-108.2(C) (emphasis added). In this case, however, the circuit court averaged the parties' incomes from 2019, 2020, and 2021 to calculate its retroactive child support award for 2020. If the circuit court relied on Code § 20-108.2(C) to average parties' incomes, it erred by including income earned outside of the period of retroactivity in its average.

[6] Having addressed wife's appeal, we deny her motion to expedite as moot. Given the Court's decision to remand, we find it unnecessary to address wife's motion to remand.