## Salem

WOODY'S AUTO PARTS, et al.

v.

ROBERT JONES ROCK

No. 0722-86-3

Decided March 3, 1987

COUNSEL

John L. Cooley, Gary E. Tegenkamp (M. Lanier Woodrum, Fox, Wooten & Hart, P.C., on brief), for appellants.

Richard D. Lucas (John P. Grove, Woods, Rogers & Hazlegrove, on brief), for appellee.

OPINION

**COLE, J.** — Appellants, Woody's Auto Parts (employer) and Sentry Insurance Company (carrier), appeal from a decision of

the Industrial Commission contending that the commission erred when it decided: (1) that the carrier could not recover cost-of-living supplements it paid to claimant from July 1983 through February 1984; and (2) that the carrier had to deal with and pay directly the pharmacy chosen by the claimant. On cross-appeal, the appellee, Robert Jones Rock, challenges the Industrial Commission's finding that the drug, Clonidine, is not necessary for the treatment of his industrial injury and that the appellants should not, therefore, be required to furnish the drug. We affirm the decision of the Industrial Commission.

The claimant, Robert Jones Rock, suffered a compensable back injury on June 19, 1981. On August 12, 1981, the commission awarded the claimant temporary total compensation in the maximum amount of $213 based on an average weekly wage of $401.50. In early 1983, the claimant requested cost-of-living benefits under Code § 65.1-99.1 and on March 28, 1984, the claimant formally applied for a hearing to determine his entitlement, if any, to cost-of-living benefits. Before a hearing was scheduled, however, on September 17, 1984, the parties entered into a compromise agreement whereby the claimant was allowed to keep $1,569.58 in cost-of-living benefits which the carrier had already paid; and beginning March 2, 1984, the carrier agreed to pay claimant an additional $26.52 per week in supplements. This compromise agreement was approved by order of the Industrial Commission entered on October 2, 1984, and under the agreement the claimant's compensation rate was increased from $213 to $266.57 per week effective March 2, 1984, to reflect cost-of-living supplements. After several adjustments were made, this rate was increased again on October 1, 1984, to $274.13 per week.

On May 28, 1985, the carrier reduced the claimant's weekly worker's compensation benefits from $274.13 to $213, alleging that the claimant's combined benefit entitlement from worker's compensation and social security exceeded eighty percent of claimant's preinjury wage and, therefore, under Code § 65.1-99.1 the claimant was not entitled to cost-of-living benefits. The Industrial Commission approved this reduction by letter dated June 6, 1985.

By letter application dated July 17, 1985, the claimant requested a hearing to require the carrier to pay for an allegedly necessary medical drug, Clonidine, and by letter dated July 30,

1985, he requested reinstatement of the cost-of-living supplements after receiving notice on July 3, 1985, that his social security benefits would be reduced to $378 per month pursuant to the mandatory offset provisions of the Act. The Social Security Administration also requested reimbursement of $3,810 of overpayments made to the claimant for March 1984 through May 1985.

On August 5, 1985, the carrier applied to the Industrial Commission for reimbursement of any cost-of-living increases that were improperly paid to the claimant, contending that Rock's receipt of social security benefits disqualified him from receiving the cost-of-living supplements. The carrier requested that these payments be refunded.

The Industrial Commission found that it was without authority to provide the relief requested upon the issue of reimbursement of the cost-of-living supplements; that the record supported the finding of the deputy commissioner that the drug, Clonidine, was not causally related to the compensable injury; and that Code § 65.1-88 required the employer or his insurance carrier to provide appropriate medical attention, including medication. The commission ordered the carrier to pay The Apothecary, or other supplier of medication, promptly within thirty days of billing. In the alternative, the carrier was directed to reimburse the employee upon presentment of paid receipts.

I.

■ We first consider whether the commission erred by ruling that it had no authority to require the claimant to reimburse the carrier for cost-of-living supplements previously paid from July 1983 through February 1984. Code § 65.1-99.1 delineates when cost-of-living supplements shall be payable.[1] Unlike other

---

[1] Code § 65.1-99.1 states in pertinent part:

In the event that the combined disability benefit entitlement of a claimant or his dependents under the Virginia Worker's Compensation Act and Federal Old-Age Survivors and Disability Insurance Act is less than eighty percent of the average monthly earnings of the claimant before disability or death, cost-of-living supplements shall be payable, in addition to the other benefits payable under this Act, in accordance with the provisions of this section to those recipients of awards resulting from occupational disease, accident or death occurring on or after July 1, 1975, under §§ 65.1-54, 65.1-56(18), 65.1-56.1(4), 65.1-65 and 65.1-65.1. The Industrial Commission may require the claimant to present evidence of filing for Federal Old-

states, there is no statute in Virginia which reduces a claimant's worker's compensation benefits when that claimant is also entitled to receive a certain amount of social security benefits. *See, e.g., Great Atlantic & Pacific Tea Co. v. Wood*, 380 So. 2d 558 (Fla. Dist. Ct. App. 1980) (applying the offset provision in Fla. Stat. § 440.15 (10)(a) (1975)); *Dailey v. Industrial Commission*, 651 P.2d 1223 (Colo. Ct. App. 1982) (applying the offset provisions in Colo. Rev. Stat. § 8-51-101(1)(c) (1973)). The Virginia statute, Code § 65.1-99.1, creates no such conflict, direct or indirect, with the Social Security Act. The coordination of the two acts does create what would appear to be a problem.

Code § 65.1-99.1 provides that cost-of-living supplements shall be payable when a claimant's combined benefit entitlement under the Virginia Workers' Compensation Act and the Social Security Act is less than eighty percent of claimant's average monthly predisability earnings. The statute does not authorize an offset of worker's compensation benefits where the claimant is receiving social security benefits. At most a claimant may become ineligible for cost-of-living supplements. But, it should be borne in mind that the purpose of worker's compensation benefits under the Act and the cost-of-living supplements is to expediently replace the worker's lost wage with a source of income.

The Social Security Act, 42 U.S.C. § 424a, does provide for a reduction in social security benefits where the claimant is also receiving worker's compensation benefits.[2] When the claimant's

Age Survivors and Disability Insurance benefits in order to establish eligibility under this section and also may require the claimant to furnish the employer with the decision on his claim for such federal benefits.

[2] 42 U.S.C. § 424a, states in pertinent part:

(a) Conditions for reduction; computation

If for any month prior to the month in which an individual attains the age of 65—

(1) such individual is entitled to benefits under section 423 of this title, and

(2) such individual is entitled for such month to periodic benefits on account of such individual's total or partial disability (whether or not permanent) under—

(A) a workmen's compensation law or plan of the United States or a State, or

(B) any other law or plan of the United States, a State, a political subdivision (as that term is used in section 418(b)(2) of this title), or an instrumentality of two or more States (as that term is used in section 418(k) of this title),

other than benefits payable under title 38, benefits payable under a program of assistance which is based on need, benefits based on service all, or substantially all, of

combined monthly benefits from both sources exceeds eighty percent of the claimant's "average current earnings," the claimant's social security benefits are to be reduced by an amount equal to the excess.

The appellants contend that the Industrial Commission has authority to direct the reimbursement of the "erroneously" paid cost-of-living supplements paid between July 1983 and February 1984, based upon Code § 65.1-100.3 and equitable principles. On the other hand, the appellee argues that the cost-of-living supplements prior to March 1984 were compromised under the settlement agreement and that there was no overpayment. He further argues that he is entitled to the cost-of-living supplements, that the Social Security Administration may yet request reimbursement, and any reimbursement to the carrier at this time is premature. Finally, he claims that the appellants are not entitled to reimbursement under Code § 65.1-100.3, that the equitable power of the Industrial Commission does not permit reimbursement, that Code § 65.1-99 precludes the Industrial Commission from requiring a refund of overpayments, and that if there is to be any reimbursement for overpayment, it is payable to the Social Security Administration, not to the appellants.

The factual situation from July 1983 through February 1984 is not in dispute. Under the federal Act, 42 U.S.C. § 424a, the social security disability benefit for any month shall be reduced to

which was included under an agreement entered into by a State and the Secretary under section 418 of this title, and benefits under a law or plan of the United States based on service all or part of which is employment as defined in section 410 of this title.

the total of his benefits under section 423 of this title for such month and of any benefits under section 402 of this title for such month based on his wages and self-employment income shall be reduced (but not below zero) by the amount by which the sum of—

(3) such total of benefits under sections 423 and 402 of this title for such month, and

(4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,

exceeds the higher of—

(5) 80 per centum of his "average current earnings," or

(6) the total of such individual's disability insurance benefits under section 423 of this title for such month and of any monthly insurance benefits under section 402 of this title for such month based on his wages and self-employment income, prior to reduction under this section.

an amount where the combined social security payment and worker's compensation benefit, including cost-of-living supplement, does not exceed eighty percent of the worker's average current earnings. We assume, as the appellant suggests, that the claimant's "average current earnings" are equivalent to his "average monthly earnings" under Code § 65.1-99.1. In this case, the Social Security Administration paid full benefits during the period in question without reducing the benefits under its offset provisions, and has made no claim against the claimant for reimbursement. The carrier paid the claimant the full base compensation rate plus cost-of-living supplements. However, it has not paid more than it was required to pay under our Workers' Compensation Act since we do not have any offset provision. The appellants concede that if the Social Security Administration ordered a reimbursement from the claimant for excess payments made during the period in question, the appellants would not be entitled to a reimbursement of the cost-of-living supplements paid the claimant. Therefore the claimant's eligibility for cost-of-living supplements under Code § 65.1-99.1 was not affected because this section focuses on the claimant's combined benefit *entitlement* during the period in question.

The issue is not whether the claimant may have received a windfall in additional benefits during the period in question; rather it is whether the cost-of-living supplements paid by the carrier to the claimant under the circumstances of this case should be reimbursed to the carrier where the Social Security Administration has not made a claim against the claimant for a reimbursement under the offset provisions of the Social Security Act.

We agree with the conclusion reached by the Industrial Commission, but for different reasons, and hold that the claimant is not required to reimburse the carrier for the cost-of-living supplements paid between July 1983 through February 1984. To permit such a reimbursement would in effect build into the Workers' Compensation Act an offset provision, which to date the General Assembly has refused to enact. The appellants argue that reimbursement should be made to them under Code § 65.1-100.3 since the claimant failed to report and thereby misrepresented or concealed his receipt of the social security benefits. The deputy commissioner, however, found "no evidence that the claimant had defrauded the defendants or misrepresented his receipt of social

security benefits." The commission noted that under the statute, in certain circumstances, it had authority to allow a credit against future compensation payments, but refused to exercise its authority in this case. Furthermore, Code § 65.1-100.3 was not then in effect, and did not become effective until July 1, 1985. We fail to see how duties imposed by this statute could affect the claimant in this case.

The appellants suggest that the supplements should be reimbursed based upon equitable principles. Ultimately, these funds may be reclaimed by the Social Security Administration which may yet request a reimbursement from the claimant. We fail to see why it is more equitable for the insurance carrier rather than the claimant to hold them and have the use of them. The Social Security Administration does not now have an action against the carrier for the funds. It does have a valid claim against the claimant for the overpayment of social security benefits which can simply be withheld against future payments if they so desire. It may be true that the claimant has received a temporary windfall. However, he gained it at the expense of the Social Security Administration rather than the carrier, which has only paid what it is obligated to pay under the Virginia Workers' Compensation Act.

## II.

The appellants allege that the Industrial Commission erred when it determined that the carrier had to do business with and directly pay the pharmacy chosen by the claimant for medications, when Code § 65.1-88 only provides that "the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician . . . and such other necessary medical attention." The appellants further contend that there is no statutory provision authorizing the commission to direct the carrier to deal with a particular drugstore or pharmacy and they ask us to ascertain the meaning of the statute that requires an employer to "furnish" such other medical attention. On the other hand, the appellee contends that he has the right to choose a medication supplier, subject only to directives from his physician, just as he has the right to choose a physician if a panel is not offered by his employer. Each of the parties takes the position that he has the legal and exclusive right to select the pharmacy or other supplier of medicine. A resolution of this case does not require us to settle

this dispute.

■ In *Jensen Press v. Ale*, 1 Va. App. 153, 336 S.E.2d 522 (1985), we found that "[a] long-held principle of the Industrial Commission, founded on Code § 65.1-88, is that medical management of the claimant is to be directed by the treating physician, not by an employer's representative." *Id.* at 158, 336 S.E.2d at 525. "[N]either the employer nor its insurance carrier may limit the treating physician in the medical specialist, or treating facilities to which the claimant may be referred for treatment." *Id.* (quoting *Beauchamp v. Cummins & Hart*, 60 O.I.C. 37, 39 (1982)).

The evidence in the record does not reveal who originally selected The Apothecary to provide the medications to Rock. Initially there was no disagreement concerning the medications, including Clonidine. The carrier and the claimant, without objection, agreed upon the pharmacy and the medications. At some point a dispute occurred because the carrier did not promptly pay the bill submitted by the pharmacy, but delayed payment from 90 to 120 days, and sometimes longer. Because of the late payments and other disagreements with the pharmacy, the carrier refused to deal with it. The deputy commissioner found that the "obstinacy" of the carrier in regard to paying The Apothecary for drugs was unjustified. The record contains ample credible evidence to support this conclusion.

■ When a dispute arises between the parties, such as the one involved here, the Industrial Commission is given authority to resolve it. Code § 65.1-92 provides that "[a]ll questions arising under this Act, if not settled by agreements of the parties interested therein with the approval of the Commission, shall be determined by the Commission."

"The General Assembly established the Industrial Commission for the summary disposition of cases arising out of industrial accidents and intended that it have jurisdiction to do 'full and complete justice' in each case." *Hudock v. Industrial Commission*, 1 Va. App. 474, 480, 340 S.E.2d 168, 172 (1986) (quoting *Harris v. Diamond Construction Co.*, 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946)).

The Industrial Commission recognized that "Section 65.1-88, Code of Virginia, requires the employer or his insurance carrier to provide appropriate attention, which includes medication." However, upon the finding that the carrier was dilatory in payment of the pharmacy bill and was "obstinate" in its dealing with the pharmacy, the commission was justified in taking appropriate measures to resolve the difficulty, even if it meant requiring the insurance carrier against its wishes to pay and deal directly with The Apothecary. In order to establish a proper procedure in the future for providing medication to the claimant in this case, the commission required the claimant to furnish the employer's insurance representative with a current certification from the attending physician of the identity of each medication required for treatment of the June 19, 1981, injury and the period for which the prescription is valid. It further ordered the carrier to pay The Apothecary, or other suppliers of medications, promptly within thirty days of billing for the medication. It further provided that with proper certification as noted above, the carrier must reimburse the employee upon presentation of paid receipts.

Upon a review of the record, and upon the facts and circumstances of this case, we find that the Industrial Commission acted within its authority in resolving the dispute between the parties over the furnishing of medications.

### III.

The deputy commissioner found that Clonidine was used for the treatment of claimant's hypertension and high blood pressure, and that it was not necessary for the treatment of his compensable injury. On appeal, the commission affirmed this finding. On the cross-appeal, the claimant had the burden to prove by a preponderance of the evidence that Clonidine was necessary for the treatment of the industrial accident. The commission held that he did not do so and the record reveals credible evidence to support this conclusion. We cannot reverse the decision of the commission because the evidence did not as a matter of law require an award in the claimant's favor on the issue.

For the reasons stated, we affirm the decision of the Industrial Commission.

*Affirmed.*

Coleman, J., and Moon, J., concurred.